IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| Plaintiff, § | Civil Case No._____ |
| § | |
| MICHAEL D. KING, and § | |
| ASCENT AVIATION SOLUTIONS, § | |
| L. L. C. § | |
| § | |
| Defendants § | |

## COMPLAINT FOR DAMAGES

The United States of America, for itself and on behalf of its agency, the Federal Aviation Administration (FAA), alleges as follows:

**I.**

This action is brought by the United States of America to recover civil penalties in the sum of $154,000 from Defendants Michael D. King ("King") and Ascent Aviation Solutions L.L.C. ("Ascent") under 49 U.S.C. § 46301(a).

**II.**

1. This Court has subject matter jurisdiction over this action under 49 U.S.C. §§ 46301 (d)(4), 46305; and 28 U.S.C. § 1345.

2. This Court has personal jurisdiction over the defendants and venue is proper in this district under 49 U.S.C. § 46106 and 28 U.S.C. §§ 1391 (b), 1395, because the defendants can be found in, reside in, and have transacted business in the Southern District of Texas. A substantial part of the events or omissions giving rise to this claim occurred in the Southern District of Texas.

3. Ascent is located in Webster, Texas.

4. King resides in the Southern District of Texas.

5. King is the registered agent of Ascent.

III.

6. The FAA establishes the requirements for operating commercial flights in the United States. These requirements are set forth in 14 C. F. R. parts 119 and 135 ("Part 119" and "Part 135").

7. Ascent advertised or otherwise offered to perform operations subject to Part 135.

8. Part 135 sets forth operating requirements for air carriers and operators for compensation or hire.

9. Part 119 addresses certification for air carriers and commercial operators. It provides that no person may operate as a direct air carrier without an appropriate certificate and appropriate operations specifications. 14 C. F. R. § 119.5 (g).

10. FAA regulations define a direct air carrier as "a person who provides or offers to provide air transportation and who has control over the operational functions performed in providing that transportation." 14 C.F. R. § 110.2.

11. The rules of Part 135 apply to a person who engages in any operation governed by Part 135 without an appropriate certificate and operations specifications required by part 119 of this chapter.

12. King is the sole owner and manager of Ascent.

13. Neither King nor Ascent holds an air carrier certificate, operations specifications, or an air operator certificate issued by the Federal Aviation Administration (FAA). Neither King nor Ascent held an air carrier certificate, operations specifications, or

an air operator certificate issued by the Federal Aviation Administration (FAA) during the period February 15, 2017 through August 17, 2017.

14. At all times relevant herein, a Cessna 500 aircraft, registration number N98Q ("the Cessna"), was registered in the name of Ascent.

15. Ascent leased the Cessna to Kevin Williams ("Williams") for a period of one year beginning February 10, 2017.

16. The lease stated that Williams was leasing "the Aircraft without crew" and would have operational control of the Cessna. The lease stated: "[f]or the times when the Aircraft has been scheduled and tendered to Kevin Williams, Kevin Williams shall be considered responsible for the operational control of the Aircraft …with respect to the exercise of authority over the initiating, conducting and terminating of the flight and the assumption of risk." The lease specifically provided that Williams was responsible for contracting the pilots.

17. The type of lease described above is known in the aviation industry as a "dry lease." Under a "dry lease," the lessor leases the equipment, and the lessee operates it and assumes the associated risks.

18. During the period from February 15, 2017 to August 17, 2017, Ascent, through the actions of King, transported Williams on the Cessna on the following fourteen (14) flights:

> a. On or about February 15, 2017, from David Wayne Hooks Memorial Airport Houston, Texas (DWH) to Memphis International Airport, Memphis, TN (MEM);
>
> b. On or about February 15, 2017, from MEM to DWH;

3

  c. On or about February 28, 2017, from DWH to Cleveland Regional Jetport, Cleveland, Tennessee (RZR);

  d. On or about February 28, 2017, from RZR to Hampton Roads Executive Airport, Norfolk, Virginia (PVG);

  e. On or about February 28, 2017, from PVG to Gwinnett County Airport- Briscoe Field, Lawrenceville, Georgia (LZU);

  f. On or about March 1, 2017, from LZU to DWH;

  g. On or about March 15, 2017, from DWH to Houma-Terrebonne Airport, Houma, Louisiana (HUM);

  h. On or about March 15, 2017, from HUM to DWH;

  i. On or about July 19, 2017, from DWH to Lovell Field Airport, Chattanooga, Tennessee (CHA);

  j. On or about July 19, 2017, from CHA to Charlottesville-Albemarle Airport Charlottesville, Virginia (CHO);

  k. On or about July 19, 2017, from CHO to CHA;

  l. On or about July 19, 2017, from CHA to DWH;

  m. On or about August 17, 2017, from DWH to Nashville International Airport, Nashville, TN (BNA); and

  n. On or about August 17, 2017, from BNA to DWH.

19. Each of the flights referenced in paragraph 18, above, was conducted under Instrument Flight Rules (IFR).

20. Williams paid Ascent for each of these flights.

21. Williams did not have operational control of the Cessna on any of these flights.

22. Ascent had operational control of the Cessna for all of these flights.

23. Williams did not contract the pilots for any of these flights.

4

24. Ascent contracted the pilots for all of these flights.

25. Ascent and King operated the flights described in paragraph 18 above as a direct air carrier.

26. The purported dry lease was a sham designed to avoid the requirements of Parts 119 and 135.

27. King, in his capacity as owner and manager of Ascent, conducted the flights referenced in paragraph (18), above, under part 135 without:

    a. a certificate issued under part 119;

    b. operations specifications appropriate to conduct operations under part 135;

    c. an accepted current manual containing Ascent's policies and procedures; or

    d. the appropriate economic authority from the Department of Transportation.

28. King, in his capacity as owner and manager of Ascent, conducted the flights referenced in paragraph (18), above, under part 135 when neither he nor Ascent:

    a. kept an individual record of each pilot used in its operations conducted under part 135;

    b. previously conducted a proving run in a turbojet airplane;

    c. prepared a load manifest before each takeoff;

    d. kept copies of completed load manifests at Ascent's principal place of operation for each of the above-described flights; or

    e. listed in Ascent's manual the name and title of each person authorized to exercise operational control of Ascent's aircraft.

29. King, in his capacity as owner and manager of Ascent, conducted the flights referenced above when:

    a.   the flights were operated by a pilot who had not passed a written or oral test given by the Administrator or authorized check pilot on those pilots' knowledge within the twelve months preceding each flight, as required under 14 C.F.R. § 135.293(a);

    b.   the flights were operated by pilots who had not passed a competency check, given by the Administrator or an authorized check pilot, in that class of aircraft, since the beginning of the 12th calendar month before the flights, as required under C.F.R. § 135.293(b).

    c.   the pilot in command had not, since the beginning of the 6th calendar month before the flights, passed an instrument proficiency check as required under 14 C.F.R. § 135.297(a);

    d.   the pilot in command had not passed a flight check in the type of aircraft the pilot was to fly since the beginning of the 12th calendar month before those flights required under 14 C.F.R. § 135.299;

    e.   the pilot-in-command had not completed the appropriate initial or recurrent training phase of an FAA approved training program since the beginning of the 12th calendar month before those flights.

30.   By reason of the allegations above, Defendants operated as a direct air carrier without, or in violation of, an appropriate certificate and appropriate operations specifications.

31.   By reason of the allegations above, Defendants operated as a direct air carrier without holding appropriate economic authority from the Department of Transportation.

32.   By reason of the allegations above, Defendants operated as a direct air carrier without having obtained an air carrier certificate and operations specifications that prescribe the authorizations, limitations and procedures under which each kind of operation must be conducted.

## IV.

33.   By reason of the foregoing, Defendants violated the following Federal Aviation Regulations:

a. 14 C.F.R. § 119.5(g), which states that no person may operate as a direct air carrier or as a commercial operator without, or in violation of, an appropriate certificate and appropriate operations specifications.

b. 14 C.F.R. § 119.5(i), which states that no person may operate as a direct air carrier without holding appropriate economic authority from the Department of Transportation.

c. 14 C.F.R. § 119.5(k), which states that no person may advertise or otherwise offer to perform an operation subject to this part unless that person is authorized by the Federal Aviation Administration to conduct that operation.

d. 14 C.F.R. § 119.33(a)(2), which states that a person may not operate as a direct air carrier unless that person obtains an air carrier certificate.

e. 14 C.F.R. § 119.33(a)(3), which states that a person may not operate as a direct air carrier unless that person obtains operations specifications that prescribe the authorizations, limitations and procedures under which each kind of operation must be conducted.

f. 14 C.F.R. § 135.3(a)(I), which states that each person operating an aircraft in operations under this part shall, while operating an aircraft inside the United States, comply with the applicable rules of this chapter.

g. 14 C.F.R. § 135.21(a), which states each certificate holder, other than one who uses only one pilot in the certificate holder's operations, shall prepare and keep current a manual setting forth the certificate holder's procedures and policies acceptable to the Administrator.

h. 14 C.F.R. § 135.63(a)(4), which states that each certificate holder shall keep at its principal business office or at other places approved by the Administrator, and shall make available for inspection by the Administrator an individual record of each pilot used in operations under this part.

i. 14 C.F.R. § 135.77, which states that certificate holder is responsible for operational control and shall list, in the manual required by §135.21, the name and title of each person authorized by it to exercise operational control.

j. 14 C.F.R. § 135.145(b), which states that no certificate holder may operate a turbojet airplane if it has not previously proved a turbojet airplane in operations under this part.

k. 14 C.F.R. § 135.293(a), which states that no certificate holder may use a pilot, nor may any person serve as a pilot, unless, since the beginning of the 12th calendar month before that service, that pilot has passed a written or oral text given by the Administrator or an authorized check pilot on that pilot's knowledge in the areas set forth

by that section.

l. 14 C.F.R. § 135.293(b), which states that no certificate holder may use a pilot, nor may any person serve, as a pilot unless, since the beginning of the 12th calendar month before that service, that pilot has passed a competency check given by the administrator or an authorized check pilot in that class of aircraft, if single-engine other than turbojet, or that type of aircraft, if helicopter, multiengine airplane, or turbojet airplane, to determine the pilot's competence in practical skills and techniques in that aircraft or class of aircraft.

m. 14 C.F.R. § 135.297(a), which states that no certificate holder may use a pilot, nor may any person serve, as a pilot in command of an aircraft under IFR unless since the beginning of the 6th calendar month before that service that pilot has passed an instrument proficiency check under section administered by the Administrator or an authorized check pilot.

n. 14 C.F.R. § 135.299, which states that each certificate holder may use a pilot, nor may any person serve, as a pilot in command of a flight unless, since the beginning of the 12th calendar month before that service, that pilot has passed a flight check in one of the types of aircraft which that pilot is to fly.

o. 14 C.F.R. § 135.323(a), which states that each certificate holder required to have a training program under § 135.341 shall establish and implement a training program that satisfies the requirements of

9

        this subpart and that ensures that each crewmember, aircraft dispatcher, flight instructor and check airman is adequately trained to perform his or her assigned duties. Prior to implementation, the certificate holder must obtain initial and final FAA approval of the training program.

   p. 14 C.F.R. § 135.343, which states that no certificates holder may uses a person, nor may any person serve, as a crewmember in operations under this part unless that crewmember has completed the appropriate initial or recurrent training phase of the training program appropriate to the type of operation in which the crewmember is to serve since the beginning of the 12th calendar month before that service.

   q. 14 C.F.R. 91.13(a), which states that no person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

34. Under 49 U.S.C. § 46301(a), Defendants are subject to a civil penalty not to exceed $12,586 for each violation of the Federal Aviation Regulations.

WHEREFORE, Plaintiff demands judgment jointly and severally against Defendants Michael D. King and Ascent Aviation Solutions in the sum of $154,000, together with costs and interest from the date of entry of judgment.

Respectfully submitted,

RYAN K. PATRICK
UNITED STATES ATTORNEY

/s/ *Michelle Zingaro*
MICHELLE ZINGARO
Assistant United States Attorney
Texas Bar No. 12345500
Federal Bar No. 14463
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9512
Email: Michelle.Zingaro@usdoj.gov