`IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     *Plaintiff*, | ) | CASE NO. 4:19-CV-1418 |
| | ) | |
| v. | ) | DEFENDANTS MICHAEL KING AND |
| | ) | ASCENT AVIATION |
| | ) | SOLUTIONS LLC MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| | ) | OR PARTIAL SUMMARY |
| | ) | JUDGMENT |
| MICHAEL KING and ASCENT | ) | |
| AVIATION SOLUTIONS LLC; | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
|     *Defendants.* | ) | [FRCP 56] |
| _____ | ) | |

Defendants Michael King and Ascent Aviation Solutions LLC Motion for Summary Judgment or Partial Summary Judgment.

Pursuant to Local Rule 7.5A, the Defendants request "oral argument" as this may be beneficial to the Court.

See Declaration of Edward A. Rose, Jr. for verification of Summary Judgment Evidence.

Table of Contents

I. Nature and Stage of the Proceeding………………………….…………..... 5

II. Issues Before the Court………………………………………………………..6

III. Summary of the Argument……………………………………………… ….6

IV. Summary of the Facts………………………………………………… … .7

V. Governing Law……………………………………………………… ……10

VI. Argument……………………………………………………………… …… 11

    A. Defendants entered into the "Dry Lease" under Part 91 of the Federal Aviation Regulations and Operated Lawfully ……………….11

    B. Defendants were not, as alleged, the single source for both the aircraft and piloting services; Defendants merely provided a list of known qualified pilots for safety reasons and at the request of the lessee……………………………………………… …….12

    C. A review of FAA Advisory Circular 91-37B strongly indicates that the Defendants entered into the "dry lease agreement" under FAR Part 91 and not to circumvent FAR Part 135 Regulations… …..13

VII. Conclusion and Prayer…………………………………………………… … 17

Table of Authorities

Cases

*B & M Leasing Corp. v. U.S.*
   331 F. 2d. 592 (5th Cir. 1964)……………………………………………………..… 15, 16

*Decruz v. Elwell*
   751 Fed. Appx. 1 (D.C. Cir. 2018)……………………………………………………16

*U.S. v. Bradley*
   252 F. Supp. 804  (S.D. of Texas, 1966) ……… ..…………………………………..……..15

*Woolsey v. NTSB*
   993 F. 2d. 516 (5th Cir. 1993)……………………………………………………………..11

Regulations

Federal Aviation Regulations Part 91……………………………………………6,7,10,11,13,15,16,17

Federal Aviation Regulations Part 135………………………………………6, 10, 11, 12, 13,15,16,17

Federal Aviation Regulations Part 119……………………………………………………………17

Federal Aviation Regulations Part 121…………………………………………………..15, 17

Federal Aviation Regulations Part 125……………………………………………………   15,17

Other

FAA Advisory Circular 120-12A………………………………………………………… …6,11

FAA Advisory Circular 91-37B……………………………………………………………   6,7,11,13

Rules

Fed. R. Civ. P. 56 (a) ( c)…(g)   …………………………………………………………….10

TABLE OF EXHIBITS

Exhibit A    NTSB Docket No. SE-30384, Elwell v. King, Ruling

Exhibit B    Aircraft Dry Lease Agreement

Exhibit C    Relevant Excerpts from Kevin Williams ( Lessee) Deposition Testimony

Exhibit D    Pilot List

Exhibit E    AMEX Statements- Kevin Williams ( Lessee)

Exhibit F    FAA Advisory Circular 120-12A (Private Carriage v. Common Carriage of Persons or Property), dated April 24, 1986

Exhibit G    FAA Advisory Circular 91-37B (Truth In Leasing), dated February 10, 2016

DECLARATIONS

Declaration of Michael King

Declaration of Robert Hans

Declaration of Lawson Brown

Declaration of Edward A. Rose, Jr. (Verification of summary judgment evidence)

## I. NATURE AND STAGE OF THE PROCEEDING

1. Plaintiff United States of America on April 18, 2019 filed a civil penalty action against Michael D. King and his solely owned company, Ascent Aviation Solutions, LLC seeking $154,000.00 in penalties for alleging the defendants were operating as a direct air carrier under Part 135 of the Federal Aviation Regulations rather than Part 91 of the Federal Aviation Regulations. Defendants merely leased an aircraft, N98Q, to the lessee Kevin Williams, since lessee required air transportation while he was considering purchasing his own aircraft under Part 91 of the Federal Aviation Regulations.

2. This complaint against the defendants, was brought maliciously and without merit by certain representatives of the Federal Aviation Administration in retaliation for a prior claim where defendant King was operating a flight school with similar allegations- See NTSB Docket No. SE-30384, Elwell v. King, which after a trial in November of 2017, the NTSB Administrative law judge in a 31 page opinion issued on March 30, 2018 **found against the Federal Aviation Administration and questioned whether the action should ever have been brought and found the key FAA witnesses not credible.** A true and correct copy of this opinion is attached at **Exhibit A** and incorporated by reference as though fully plead herein. The FAA after losing this case automatically appealed to the NTSB which as of the date of this Motion has not as yet ruled on this frivolous appeal by the FAA.

3. The Court entered a Docket Control Order [DKT 7] with a Motion for Summary Judgment deadline of January 27, 2020. The Plaintiff filed a motion for an extension of time for the parties to file their motions for summary judgment. The Court on January 23, 2020 by minute entry said the Motion for Summary Judgment was due in 30 days.

## II. ISSUES BEFORE THE COURT

4. Whether the summary judgment evidence shows that the defendant lessors, Michael King and Ascent Aviation Solutions, LLC entered into a "Dry Lease" with the lessee Kevin Williams while operating under Part 91 of the Federal Aviation Regulations.

5. Whether the summary judgment evidence shows that the defendants were using the "dry lease" to circumvent the FAA requirements for direct air carriers in violation of Part 135 of the Federal Aviation Regulations.

6. Whether the defendant lessors or the lessee Kevin Williams had "Operational Control" of the aircraft N98Q.

7. Whether the U.S. Department of Transportation Advisory Circular 91-37B dated February 10, 2016, Truth in Leasing, U.S. Department of Transportation Advisory Circular 120-12A, dated April 24, 1986, and case law of the Federal Courts support the defendant lessors' position that the "Dry Lease" agreement with lessee Kevin Williams was operating lawfully under Part 91 of the Federal Aviation Regulations or as the United States of America alleges unlawfully under Part 135 of the Federal Aviation Regulations.

## III. SUMMARY OF THE ARGUMENT

8. Plaintiff, United States of America has **not** provided any substantive evidence to prove that the Defendants Michael King and Ascent Aviation Solutions, LLC, lessors of Cessna Citation N98Q to Kevin Williams (lessee), were using the "dry lease" to circumvent the FAA requirements for direct air carriers in violation of Part 135 of the Federal Aviation Regulations. The lessors were operating lawfully under Part 91 of the Federal Aviation Regulations.

9. All of the allegations by the FAA in the Complaint are based on mere assumptions and conjecture because the FAA cannot accept the reality that the "Dry Lease" entered into between the parties was in fact a lawful "Dry Lease" under Part 91 of the Federal Aviation Regulations which the substantive evidence supports.

10. Based on FAA Advisory circular, Truth in Leasing, AC No. 91-37B, dated February 10, 2016 there is no evidence that the lessee Kevin Williams, did not exercise "Operational Control" of the aircraft on all his flights for personal transportation.

11. Decisions of the Federal Circuit Courts will support the summary judgment evidence that the Defendants were not in violation of the Federal Aviation Regulations, but merely leased aircraft N98Q on a lawful "Dry Lease" under Part 91 of the Federal Aviation Regulations.

### IV. SUMMARY OF THE FACTS

12. On February 10, 2017 the parties Ascent Aviation Solutions LLC (lessor) and Kevin Williams (lessee) entered into an "Aircraft Dry Lease Agreement" on a non-exclusive basis for a period of one (1) year under Part 91 of the Federal Aviation Regulations. A true and correct copy of the "Aircraft Dry Lease Agreement" is attached at **Exhibit B** and incorporated by reference as though fully plead herein.

13. The major provisions of the "Aircraft Dry Lease Agreement" allowed the lessee Kevin Williams to use the aircraft when required if the aircraft was available. Kevin Williams executed the subject lease and had his attorney reviewed the lease before it was signed and returned to the Lessor (See **Kevin Williams Deposition Excerpts at Exhibit C**, Page 23 ln 18-25.

14. In the executed lease agreement, the lease stated that lessee Kevin Williams was leasing " the Aircraft without crew" and would have operational control of the of Cessna N98Q. The lease also stated that the lessee Kevin Williams agreed to have "operational control" of the aircraft with respect to the exercise of authority over the initiating, conducting, and terminating the flight and also contracting the pilots during the lease term. Kevin Williams agreed to pay the lessor, $1,000,00, per hour use of the aircraft and agreed to pay directly for all operational expenses of the aircraft such as the pilot, co-pilot, fuel for the aircraft, and other incidental expenses such as landing fees, parking fees, and other related expenses incurred at the FBO (Fixed Base Operator) where the aircraft was parked.

15. During the lease term, from February 15, 2017 to August 17, 2017, lessee Kevin Williams used the aircraft for fourteen (14) flights. Prior to commencing any of the flights, <u>lessor provided Kevin Williams a list of qualified pilots to choose from for each flight who were not employees of the lessors.</u> This was done primarily for safety reasons since the pilots on the list were qualified and met the insurance requirements. A true and correct copy of that pilot list is attached at **Exhibit D** and incorporated by reference as though fully plead herein.

16. On August 17, 2017 when the aircraft landed at Nashville International Airport, FAA personnel and law enforcement conducted a ramp inspection to determine the nature of the flight and to determine if the flight was one under Part 135 of the Federal Aviation Regulation. FAA personnel then interviewed both the pilots and lessee Kevin Williams.

17. On August 3, 2018, a year later, Defendants received a letter of investigation from Aviation Inspector Charles A. Tompkins, Jr. stating that the fourteen (14) fights were in violation of Part 135 of the Federal Aviation Regulations.

18. In this case, the Defendant lessors provided N98Q to the lessee Kevin Williams for his use when available at a rate of $1,000.00 per hour pursuant to the executed lease agreement.

Defendant lessor also provided Lessee Kevin Williams, a list of qualified pilots to fly citation N98Q. Kevin Williams called the pilots directly, paid them directly and paid for operating expenses of the aircraft including fuel and any additional expenses charged by the Fixed Base Operator (FBO) at the airport where the aircraft landed. Kevin Williams was also considering the purchase of the aircraft. **See Declaration of Michael King** and see also **Kevin Williams Deposition Excerpts, Exhibit C**, Page 21-22 Ln 25-2; Page 70 Ln. 1-11; Page 72 Ln 4-12; Page 73 Ln. 16-23; Page 78 Ln. 2-13; Page 79 Ln. 14-18, Page 80 Ln 3-23, Page 81 Ln. 5-9; Page 82 Ln. 12-23; Page 83 Ln. 11-15; and Page 84 Ln. 15-17;

19. In its discovery responses, Plaintiff the United States of America subpoenaed various financial records from the lessee, Kevin Williams. All that the United States of America produced to the Defendants was the charges made by Kevin Williams to his AMEX card for the flights on August 17, 2017. These reflect the payments Kevin Williams made using his AMEX card for fuel purchased at the FBO, the dry lease payment for use of the aircraft, and the pilot which on this flight was Robert Hans. Additionally, the summary of AMEX charges only shows the defendants receiving payment for the use of the aircraft at $1,000.00 per hour. A true and correct copy of these statements are attached at **Exhibit E** and incorporated by reference as though fully plead herein. No other payment records pertaining to the use of the aircraft by Kevin Williams has been provided the Defendants in discovery.

20. See also Declaration of Robert Hans who was the pilot on the flight which was ramp checked by the FAA and where Robert Hans stated be believed the lessee Kevin Williams contact him personally and was paid by the lessee Kevin Williams by credit card. See **Exhibit E**.

21. See also Declaration of Retained Expert, Lawson Brown, II who previously provided an expert opinion. Lawson Brown, II in his declaration states that the lessors were operating under Part

91 of the Federal Aviation Regulations and not operating in violation of Part 135 of the Federal Aviation Regulations.

22. The lessee had 'full operational control" of the aircraft as the lessee selected the pilots, who then prepared and filed the flight plans and made all decisions whether to conduct the flight. The lessors were **never** involved in the selection of pilots, did not create or file the flight plan, and never made the decision whether to conduct the flight or not. The lessors only collected the $1,000.00 per hour fee for the use of the aircraft.

23. Lessors have unfairly been a target of the FAA for some time who have conducted a witch hunt to which the lessors have been the victims. The FAA has flaunted and abused applicable laws and regulations, and exhibited a pattern and practice of depriving the defendants the ability to conduct their business under Part 91 of the Federal Aviation Regulations. Furthermore, the FAA with its vague guidelines and ambiguous Advisory Circulars created fertile ground for their unlawful patterns of practice.

### V. GOVERNING LAW

24. A court may grant summary judgment as to "each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought." FRCP, Rule 56(a) (emphasis added). Moreover, a court may "enter an order stating *any* material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." FRCP, Rule 56(g)(emphasis added). Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);

## VI. ARGUMENT

### A. Defendants entered into the "Dry Lease" under Part 91 of the Federal Aviation Regulations and Operated Lawfully

25. Defendants were lawfully operating under Part 91, but was wrongfully charged by the FAA alleging the fourteen (14) flights, the basis of the current action, were as a "common carrier" under Part 135. There is no reasonable dispute that Defendants were operating under Part 91. Heavy reliance was placed on FAA Advisory Circular No. 120-12A, dated April 24, 1986, "Private Carriage Versus Common Carriage of Persons or Property" which provides guidelines for determining if an operation is private or common carriage, and FAA Advisory Circular No. 91-37B, dated February 10, 2016, "Truth in Leasing" which provides guidelines on the use of dry leases. A true and correct copy of these FAA Advisory Circulars are attached at **Exhibits F and G**, respectively as though fully plead herein.

26. As stated in FAA Advisory Circular 120-12A, A common carrier is defined by four elements: (l) a holding out or willingness to; (2) transport persons or property; (3) from place to place; (4) for compensation. The crucial determination is whether the carrier has held itself out to the public or to a definable segment of the public as being willing to transport for hire, indiscriminately. Only those carriers who affirmatively hold themselves out to the public, either by advertising or by a course of conduct evincing a willingness to serve members of the general public or a segment thereof indiscriminately, so long as they are willing to pay the fee of the carrier, will qualify as common carriers. *Woolsey v. NTSB,* 993 F. 2d 516 (5th Cir. 1993). In this case the court said at [525] "the objective conduct of PTI, holding out its services to the music industry

and actually serving scores of different musicians, makes PTI's operations subject to FAR Part 135. The subjective intentions of Woolsey are not controlling. It is the objective conduct of himself and his corporation which bring their act under FAR Part 135." In the instant case, Defendants merely leased their aircraft to the lessee Kevin Williams.

B. **Defendants were not, as alleged, the single source for both the aircraft and piloting services; Defendants merely provided a list of known qualified pilots for safety reasons and at the request of the lessee**

27. The lessee Kevin Williams **only** paid the Defendant lessors the $1,000.00 per hour for use of the aircraft N98Q. The lessee, in his deposition stated that he paid for pilot services, fuel for the aircraft and any other airport fees by his AMEX credit card. This was evident by his AMEX card charges (see **Exhibit E**). The lessors and lessee both executed the "Dry Lease" and both performed under the lease agreement signifying mutual assent based on the actions of the parties.

28. As stated above, lessee Kevin Williams was provided a list of pilots whom he chose to be pilot in command of the flight. Robert Hans was the pilot on the last two (2) flights by Kevin Williams. Robert Hans stated he was the pilot in command and he was responsible for ensuring the aircraft was safe, filed the flight plan, and made the decision whether to conduct the flight or not depending on the weather conditions and ceilings and ensuring the aircraft's weight and balance limits. See **Declaration of Robert Hans**.

12
Motion for Summary Judgment

**C.    A review of FAA Advisory Circular 91-37B strongly indicates that the Defendants entered into the "dry lease agreement" under FAR Part 91 and not to circumvent FAR Part 135 Regulations.**

Certain excerpts of the Circular are as follows:

29.    **Paragraph 4.6 Operational Control.** As defined in § 1.1, operational control "with respect to a flight; means the exercise of authority over initiating, conducting or terminating a flight." Operational control involves three basic areas: Aircrew, Aircraft, and Flight Management. These areas, summarized below, are intended to give a general understanding of operational control. When chartering an aircraft, the charter air carrier has operational control and is responsible for regulatory compliance and the safety of the flight. When an aircraft lessee operates an aircraft under general operating rules, the lessee accepts operational control responsibilities. Operational control is an important regulatory concept for lessees to understand and it is explained in more detail in FAA Order 8900.1, Flight Standards Information Management System (FSIMS), Volume 6, Chapter 2, Section 22, Safety Assurance System: Operational Control Inspections, available at http://fsims.faa.gov. **The evidence shows that the lessors did not provide or pay for the pilots nor did they manage the flight or file any flight plans. That was accomplished by the pilot hired by the lessee, Kevin Williams. Thus, the contention that the lessors had operational control is a mere fiction.**

30. **PARAGRAPH 6.3** Regardless of how the lease is named, there are a few questions that can clarify who will maintain operational control:

1. Who makes the decision to assign crewmembers and aircraft; accept flight requests; and initiate, conduct, and terminate flights?

2. For whom do the pilots work as direct employees or agents?

3. Who is maintaining the aircraft and where is it maintained?

4. Prior to departure, who ensures the flight, aircraft, and crew comply with regulations?

5. Who decides when/where maintenance is accomplished, and who directly pays for the maintenance?

6. Who determines weather/fuel requirements, and who directly pays for the fuel?

7. Who directly pays for the airport fees, parking/hangar costs, food service, and/or rental cars?

In the instant case (1) the pilot hired and paid for by the lessee Kevin Williams accepted the flight, initiated, conducted, and terminated the flight; (2) the pilots were hired and paid for directly by the lessee Kevin Williams, (3) the aircraft is parked at the lessors' hanger since it is a non-exclusive lease, (4) the pilot who was hired and paid for by the lessee Kevin Williams ensured all regulations were complied with as Pilot In Command, (5) the maintenance was performed pursuant to the maintenance manual supplied by the manufacturer and paid for by the lessee Kevin Williams as part of the hourly rate the lessee paid for use of the aircraft, (6) the Pilot in Command hired by the lessee Kevin Williams

determined the weather requirement and the fuel was paid directly by the lessee Kevin Williams via his AMEX card, and (7) the lessee Kevin Williams paid for any airport fees, parking, food service and /or rental cars if any via his AMEX card.

**Even though this advisory circular is not regulatory but an advisory bulletin it is obvious that the defendant lessors did not have operational control of the aircraft even though the FAA alleges otherwise. It should be noted that the FAA publishes this Circular to advise others as to whether a regulation would be violated.**

8. **PARAGRAPH 8.3** The FAA has taken the position that if a person leases an aircraft to another and also provides the flightcrew, fuel, and maintenance, the lessor of the aircraft is the operator. If the lessor makes a charge for the aircraft and services, other than as provided for in part 91 subpart F, the operation of the aircraft is subject to 14 CFR part 121, 125, 129, 135, or 137 depending upon the type or size of the aircraft as described in § 91.501. This position is supported by *U.S. v. Bradley*, 252 F. Supp. 804 (1966) [S.D. Texas]; and *B & M Leasing Corp. v. U.S.*, 331 F.2d 592 (1964) [5th Cir.].

31. The Court in *Bradley* at [805[ said "Thus, if the defendants are engaged in the carriage of persons or property for hire, they must have the certification required by 14 C.F.R. 121.3(f). No authority in point has been cited, and the Court has found none. **The defendant argues that it is the lessee of the plane - not he - who is the carrier of the persons or property. This well may be true as to that fraction of his business whereby he leases the plane to**

**others who through their own pilots, crew, and facilities use it as their own for the term of the lease**. However, I think the contrary is true as to his normal operation. Obviously, the purpose of the regulatory provisions is to afford the greater safety and comfort to all who fly and the carrier must meet the stipulated requirements. It is the defendant here who owns, operates through his employees, maintains and offers the services of the airplanes to others who should submit to this regulation. He is the carrier of persons or property for hire. It is not the group of fishermen or the football team who may desire the services of the plane who constitute the "carrier" as used in the cited regulation." Thus, based on the holding in this case, the Defendant lessors were not operating under FAR Part 135, only under FAR Part 91. As stated above, the lessor defendants in the instant case did not provide and pay for the pilot and co-pilot nor did the lessors pay for the fuel and other incidental expenses that may have been incurred when they landed at their destination. The lessor defendants only provided a list of qualified pilots to assist the lessee since he did not know any qualified pilots.

32. In *B & M Leasing Corp.* at [593] the Court said "No purpose would be served by a recital of the evidence.". In this case B & M leasing were in violation of FAR Part 135.

33. In *Decruz v. Elwell,* 751 Fed. Appx. 1 (D.C. Cir. 2018) the Court found that Decruz had held himself out as a FAA Part 135 operation and also had operational control of the flights. The Court said at [6], "The record contains evidence of Decruz's expressions of willingness to provide transportation to multiple individuals—including Webster and other Key Constructors employees—as well as Decruz's reputation for providing [**7] such transportation. To illustrate, a friend had introduced Decruz to Webster years earlier as a pilot available to provide flight services, and Decruz does not deny that he had previously provided flight services to Webster for compensation. Decruz, for his part, presented no contrary evidence. That is sufficient to sustain the Board's factual finding that Decruz held himself out as willing

to provide flight services." The Court also held that Decruz had "Operational Control" and said at [7] "Operational control" is "the exercise of authority over initiating, conducting or terminating a flight." 14 C.F.R. § 1.1. In addition to the undisputed fact that Decruz alone flew the plane, Decruz (i) decided which types of airplanes would be appropriate for the flight, (ii) allowed Webster only to select from among the plane types that Decruz designated, (iii) singlehandedly completed the pre-flight planning, (iv) determined from where the flight would depart, (v) decided alone if the weather conditions were safe for the flight to be undertaken, (vi) purchased fuel and fueled the airplane, and (vii) exercised exclusive responsibility for aircraft maintenance. Evidence also showed that Decruz acted as if he worked for himself and was the person who ensured that the flight complied with federal regulations."

34. Thus, based on *Decruz* there is no evidence that the defendant lessors held themselves out to provide transportation to lessee Kevin Williams and also based on *Decruz* the lessors did not have "Operational Control" of the aircraft leased to the lessee Kevin Williams. Thus, the "Dry Lease" was performed under FAR Part 91 and not in violation of FAA 135.

35. The Complaint also alleges violation of Federal Aviation Regulation Part 119. Defendants are **not** in violation Part 119 because the defendants operate under Part 91. Part 119 only applies to operations under Part 121, 125, or 135.

### VII.   CONCLUSION AND PRAYER

After a review of the summary judgment evidence it is clear that a "dry lease" was entered into and performed under Part 91 of the Federal Aviation Regulations. The lessors merely provided a list of pilots for the lessee to choose from who were qualified to operate the aircraft as pilot in command and met the insurance requirements for those who were not specifically named in the

policy. The evidence also shows that the lessors did not have "operational control" of the flights even though as usual the FAA disregards its own circulars and has a tendency to twist the interpretation of its own circulars. The summary judgment evidence shows that the lessors did not plan the flight, did not file the flight plan, did not inspect the aircraft prior to the flight, did not determine if the flight was a go based on the weather conditions, did not calculate weight and balance, and Defendant King did not pilot any of the 14 flights alleged in the Complaint. Thus, the Motion for Summary Judgment should be granted.

February 22, 2020

/s/ Edward A. Rose, Jr.

Edward A. Rose, Jr., Attorney at Law, PC
Edward A. Rose, Jr., Esq.
Attorney-in-Charge
State of Texas Bar No. 24081127
Southern District of Texas Bar No. 1645585
3027 Marina Bay Drive  Suite 208
League City, Texas 77573
Phone: 713-581-6029
Fax:  832-201-9960
edrose@edroseattorneycpa.com
Attorney for Defendants Michael D. King and
Ascent Aviation Solutions, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on this 23rd day of February 2020, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Ariel N. Wiley
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
T (713) 567-9000
F (713) 718-3303
Ariel.wiley@usdoj.giv

February 23, 2020

                                  /s/ Edward A. Rose, Jr.

                                  Edward A. Rose, Jr., Attorney at Law, PC
                                  Edward A. Rose, Jr., Esq.